**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ROBERT J. LOWE, JR.,
<u>Plaintiff-Appellant,</u>

v.

No. 95-3038

MERCEDES BENZ OF NORTH AMERICA,
INCORPORATED,
<u>Defendant-Appellee.</u>

ROBERT J. LOWE, JR.,
<u>Plaintiff-Appellant,</u>

v.

No. 96-1501

MERCEDES BENZ OF NORTH AMERICA,
INCORPORATED,
<u>Defendant-Appellee.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-462-A)

Argued: November 1, 1996

Decided: December 5, 1996

Before WILKINSON, Chief Judge, and RUSSELL and WIDENER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Emery Draim, LOWE & ASSOCIATES, P.C., Alexandria, Virginia, for Appellant. Robert Martin Tata, HUNTON & WILLIAMS, Norfolk, Virginia, for Appellee. **ON BRIEF:** Robert J. Lowe, Jr., LOWE & ASSOCIATES, P.C., Alexandria, Virginia, for Appellant. Gregory N. Stillman, HUNTON & WILLIAMS, Norfolk, Virginia; Stuart A. Raphael, HUNTON & WILLIAMS, McLean, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Robert J. Lowe, Jr. leased a new E320 Cabriolet Mercedes-Benz from a dealer. When a warning light on his dash occasionally remained illuminated instead of shutting off, Lowe sought rescission of the lease and damages under state and federal law. The district court found no merit in appellant's claims, and we affirm its judgment.

I.

Lowe, a Virginia attorney, leased his 1995 Mercedes-Benz on September 30, 1994 from HBL, a Mercedes-Benz dealer. The vehicle is a convertible, equipped with a pop-up "roll bar" embedded in two headrests in the rear seat back. The roll bar is designed to protect back seat passengers in the event that the car flips over. The roll bar deploys automatically in an accident and can also be raised and lowered manually.

On the front dashboard is a roll bar warning light which illuminates briefly when the car is started and goes out after a few seconds. This

2

light is intended to remind the driver to manually deploy the roll bar if he or she has passengers in the back seat.

On February 24, 1995, Lowe told the dealer that the roll bar warning light stayed on sometimes when the engine was running. HBL ran tests on the vehicle, but was "unable to duplicate any problem with [the] system." During March, Lowe discussed with the Customer Service Director at HBL his desire to trade in the E320 for a new, larger, S-Class Sedan. HBL offered to pay out the lease balance to discharge Lowe's current lease if Lowe would pay the taxes on the new vehicle. Lowe responded that "it would be easier to sue than to pay the several thousand dollars in taxes."

On March 20, 1995, Lowe returned his E320 to HBL, again complaining that the roll bar warning light was remaining on too long. Lowe testified that at this time he was already thinking of filing a claim under Virginia's Lemon Law and knew he had to bring the car in for repairs at least three times before doing so. HBL again could not find the problem.

On April 3, 1995, Lowe brought his car in to HBL for a third repair attempt. On this occasion, Lowe brought with him a video tape showing an occasion on which the roll bar light stayed illuminated. The HBL representative did not view the tape because he "didn't doubt [Lowe]." Again, the repair staff was unable to duplicate or repair the problem, so they returned the car to Lowe on April 6.

That same day, Lowe filed suit against the vehicle manufacturer, Mercedes-Benz of North America ("MBNA"), alleging violation of the Virginia Lemon Law. Va. Code Ann. § 59.1-207.9 et seq. He later amended his complaint to add claims under the Leases section of the Virginia Commercial Code and under the federal Magnuson-Moss Act. The case was tried before a district judge, who ruled in favor of MBNA on all claims. Lowe appeals that judgment. Five months after the trial, he also filed a motion under Fed. R. Civ. P. 60(b) for relief from judgment, which the district judge denied. Lowe appeals that denial. This case is a consolidation of the two appeals.

3

II.

A.

Lowe first seeks relief under the Virginia "Lemon Law," which requires vehicle manufacturers to repair, replace, or provide a refund for a vehicle with any defect that "significantly impairs the use, market value, or safety of the motor vehicle . . . ." Va. Code Ann. § 59.1-207.13. The parties agreed that Lowe's E320 had an electrical defect, and that the defect had not been repaired in three repair attempts. Lowe argues that he is therefore entitled to the presumption of significant impairment under the Virginia Lemon Law. Va. Code Ann. § 59.1-207.13(B).

The trial judge found, however, that the evidence overcame this presumption, and that the malfunction did not significantly impair either the safety or the marketability of the car. The court found MBNA's experts to be more credible and accurate than Lowe's experts on the question of what could be wrong with the car, and how the possible defects affected the car's safety and marketability. There was ample evidence that the car was completely safe and the roll bar fully operational despite occasional illumination of the dashboard light.

The judge also observed that Lowe and his family continued to drive the car the same amount each month after the defect appeared, even though Lowe claimed the problem seriously impaired the car's safety. While it is true that the Lemon Law allows consumers the unconditional right to keep using defective vehicles until replacement or refund, Va. Code Ann. § 59.1-207.13(A)(2), Lowe owned five other vehicles as well as a motorcycle. Had he truly believed the Mercedes' safety was compromised, it seems unlikely that he and his family would have continued to drive the vehicle with the same frequency.

Further, the marketability of the car could not have been significantly impaired since Lowe received, in April 1995, appraisals of the car at $65,000 and an offer to buy it for $69,000. The vehicle's purchase price to Lowe was $76,999.

4

In sum, we cannot say the district court was clearly erroneous in finding that the vehicle's safety and marketability had not been significantly impaired.

B.

Lowe next argues that he is entitled to relief under the Virginia Commercial Code as it applies to leases. He seeks rescission of the lease with a return of his lease payments. Virginia Code § 8.2A-517(1) allows a lessee to revoke acceptance of goods whose nonconformity "substantially impairs the value to the lessee."

Lowe's claim fails for two reasons. First, the judge found, as discussed supra, that the vehicle's safety and marketability were not significantly impaired. Second, Lowe's UCC claim is barred because Lowe continued to use the E320 after supposedly revoking acceptance of it, a violation of the duty to "hold with reasonable care" a rejected good. Va. Code Ann. § 8.2A-512(1).

C.

Finally, Lowe argues that he is entitled to relief under the Magnuson-Moss Act, 15 U.S.C. § 2301-2312. This Act provides consumers with protection if manufacturers fail to comply with written or implied warranties, and the amount in controversy exceeds $50,000. See 15 U.S.C. § 2310(d).

Lowe's claim that MBNA violated the written warranty fails because Lowe did not comply with the warranty's requirement that he give MBNA written notice of his claim before filing suit:

> To the extent allowed by state law, Mercedes-Benz of North America, Inc. requires that you first provide us with written notification of any alleged non-conformity you have experienced with your automobile so that we may have an opportunity to cure the problem.

This requirement was disclosed in MBNA's warranty booklet, in accordance with the disclosure requirements of 15 U.S.C.

5

§ 2302(a)(5). Lowe, therefore, had an obligation to comply with the requirement to give MBNA written notice before filing this suit. He failed to do so, and cannot now sue to enforce the warranty.

As to any implied warranty of merchantability, the E320 was in compliance because it was at all times fit and used for its ordinary purpose -- transportation.

D.

Lowe filed a Rule 60(b) motion nearly five months after trial when the warning light problem in his E320 reappeared following a post-trial repair attempt by MBNA. Consistent with the testimony of its expert witness on the nature of the car's defect, MBNA had replaced the wiring harness in the E320. The roll bar warning light subsequently malfunctioned yet again. Lowe argues that this malfunction proves that MBNA's expert witness had given "fraudulent and/or mistaken testimony" at trial which formed the basis for the judgment in favor of MBNA. Lowe also argues that MBNA's failure to effectively repair the vehicle constituted "newly discovered evidence" under 60(b)(2).

Events occurring after trial are not "newly discovered evidence" within the meaning of 60(b)(2). See 11 C. Wright & A. Miller, Federal Practice and Procedure § 2859 (2d ed. 1995) ("Under both rules [59 and 60(b)(2)], the evidence must have been in existence at the time of the trial."); Boyd v. Bulala, 672 F. Supp. 915, 922 (W.D. Va. 1987) (same), rev'd in part on other grounds , 877 F.2d 1191 (4th Cir. 1989). Further, the trial judge found that the 60(b) motion was "no more than a continuing disagreement with[MBNA's expert witness], an issue that has been resolved adversely to the plaintiff." We agree and hold Lowe's 60(b) motion properly denied.

III.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

6